## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

================================
                              :

**AUCTUS FUND, LLC,**            :
                              :

      **Plaintiff,**         :
                              :

      **v.**            :        **Civil Action No._____**
                              :

**FONU2, INC.,**              :
**JOEL A. a/k/a "JAKE" SHAPIRO, and**  :
**ROGER MIGUEL,**         :
                              :

      **Defendants.**       :
                              :
================================

## COMPLAINT AND DEMAND FOR JURY TRIAL

### I. INTRODUCTION

1.      The Plaintiff, Auctus Fund, LLC (hereinafter "Auctus" or the "Fund"), respectfully submits its Complaint and Demand for Jury Trial (hereinafter the "Complaint") against the Defendant, Fonu2, Inc. (hereinafter the "Company," "Fonu2" or "FONU"), Joel A. a/k/a "Jake" Shapiro (hereinafter "Shapiro") and Roger Miguel (hereinafter "Miguel") (collectively, hereinafter the "Defendants") in the above-captioned action.  The Plaintiff's allegations, as set out herein, are asserted for damages arising from, and resulting from the Defendants' violations of the following:

      a)      Section 10(b) of the Securities Exchange Act of 1934, *as amended* (hereinafter the "Exchange Act"), 15 U.S.C. §78j(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. §240.10b-5;

      b)      "control person" liability pursuant to Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a);

      c)      Massachusetts Uniform Securities Act, M.G.L. c.110A, §§ 101 & 410(a),

*et seq.,* as amended (hereinafter the "Uniform Securities Act");

d)      "control person" liability pursuant to Section 410(b) of the Uniform Securities Act, M.G.L. c. 110A, § 410(b);

e)      breach of contract;

f)      breach of implied covenant of good faith and fair dealing;

g)      unjust enrichment;

h)      breach of fiduciary duty;

i)      fraud and deceit;

j)      negligent misrepresentation;

k)      Massachusetts Consumer Protection Act, M.G.L. c.93A, §§ 2 & 11; and/or

l)      civil conspiracy.

2.      The Plaintiff further alleges that, as a result and as caused by the Defendants' breaches, actions, omissions, policies, practices, and/or courses of conduct, Auctus has suffered irreparable harm, requiring injunctive relief and specific performance, harm to its business and reputation in the investment industry, damages from the Defendants' coercion, duress, fraudulent concealment and unfair and deceptive anti-competitive acts, causing lost revenue, lost profits and prospective business, together with its injuries and damages.

3.      The Plaintiff respectfully requests that its causes of action against the Defendants proceed to a trial by jury, that a judgment be entered on all Counts against the Defendants and that Auctus be awarded its general, compensatory and consequential damages and losses, costs, interest, plus multiple and/or punitive damages, attorneys' fees, and grant, order and enter temporary, preliminary and permanent injunctive and equitable relief, and grant, order and enter declaratory relief, and any such other relief as this Honorable Court deems just and appropriate.

## II. <u>PARTIES</u>

4.      The Plaintiff, Auctus Fund, LLC is a limited liability company, duly organized in the State of Delaware, with its principal place of business located at 545 Boylston Street, 2nd Floor, Boston, Massachusetts 02116.

5.      Upon information and belief, the Defendant, Fonu2, Inc., is a corporation, duly organized in the State of Nevada, with its principal place of business located at 4321 Libby Lane, Land O Lakes, Florida 34639. Upon information and belief and at certain times relevant hereto, the Company had principal executive offices located at 135 Goshen Road Ext. Suite 205, Rincon, Georgia 31326.

6.      Upon information and belief, the Defendant, Joel A. ("Jake") Shapiro, is, or was during the relevant time, the Chairman of Fonu2, Inc. Upon information and belief, Shapiro is, or was during the relevant time, a resident of Savannah, Georgia. Upon information and belief, at certain times relevant hereto, Shapiro is, and was, a "control person" of the Company, pursuant to Section 20(a) of the Exchange Act and Section 410(b) of the Massachusetts Uniform Securities Act. Upon information and belief, Shapiro transacted, or has transacted during certain times relevant hereto, specifically and generally, business in this District and in Massachusetts. The Defendant Shapiro, alone and/or in concert with others, supervised, managed, controlled and directed, and had the authority to supervise, manage, control and direct, the acts, omissions, practices and/or courses of conduct of Defendant FONU, including but not limited to the transactions, specifically and generally, in this District and in the Commonwealth.

7.      Upon information and belief, the Defendant, Roger Miguel, is a Canadian citizen who is, or was during at certain times relevant hereto, residing in Savannah, Georgia, and the Chief Executive Officer (hereinafter the "CEO") of Fonu2, Inc. Upon information and belief, at certain

times relevant hereto, Miguel is, and was, a "control person" of FONU, pursuant to Section 20(a) of the Exchange Act and Section 410(b) of the Massachusetts Uniform Securities Act. Upon information and belief, Miguel transacted, or has transacted during certain times relevant hereto, specifically and generally, business in this District and in Massachusetts. The Defendant Miguel, alone and/or in concert with others, supervised, managed, controlled and directed, and had the authority to supervise, manage, control and direct, the acts, omissions, practices and/or courses of conduct of Defendant FONU, including but not limited to the transactions, specifically and generally, in this District and in the Commonwealth.

### III. JURISDICTION, VENUE AND FRAUDULENT CONCEALMENT

8.      The Plaintiff asserts that this Honorable Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, and pursuant to Section 22(a) of the Securities Act of 1933, *as amended*, 15 U.S.C. § 77v(a) (hereinafter the "Securities Act"), and Section 27(a) of the Exchange Act, 15 U.S.C. §78aa(a).

9.      The Plaintiff contends that, pursuant to 28 U.S.C. § 1391(b), venue is proper in the District of Massachusetts in that, pursuant to the Transaction Documents (defined below), the Plaintiff Auctus and the Defendants agreed that any and all disputes between and/or among them shall be brought, *inter alia*, in the state or federal courts in the Commonwealth of Massachusetts. Additionally, this Court is in such District where the Plaintiff Auctus is headquartered and has its principal place of business and is where the violative conduct described herein is alleged to have occurred.

10.     This Court has personal jurisdiction, generally and specifically, over the Defendants by express terms of the Agreement, and as arising from its extensive business contacts,

generally over time and specifically, in its business dealings with the Plaintiff within the Commonwealth.

11.     Massachusetts General Laws, Chapter 260, Section 12, provides, in pertinent part, as follows:

> "If a person liable to a personal action fraudulently conceals the cause of such action from the knowledge of the person entitled to bring it, the period prior to the discovery of his cause of action by the person so entitled shall be excluded in determining the time limited for the commencement of the action.

M.G.L. c.260, § 12. The Plaintiff alleges that its claims herein are not time barred in that the Defendants fraudulently concealed the facts and circumstances of their causes of action, resulting in tolling and that such time period is excluded in the determination of the time limited for the commencement of the instant action.

## IV. <u>FACTUAL BACKGROUND</u>

### A.      Background of Medient Studio, Inc., a/k/a Moon River <u>Studios, Inc. and the Conveyance of Assets to Fonu2, Inc.</u>

12.     Medient Studio, Inc., a/k/a Moon River Studios, Inc. (hereinafter "Moon River") was a Nevada corporation with its headquarters in Rincon, Georgia. On or about June 25, 2014, the U.S. Securities and Exchange Commission (hereinafter the "SEC" or the "Commission"), suspended trading in Medient's securities for ten (10) business days due to question regarding the accuracy of publicly disseminated information concerning, among other things, Medient's amount of total shares outstanding. In or about August 2014, Medient change its name to "Moon River Studios, Inc."

13.     In or about the beginning of 2015 and prior to the Plaintiff's investment, Moon River announced that it was closing its doors and that all Moon River directors and officers – other than CEO Shapiro - had purportedly resigned.  At or about that time, Defendant FONU was

then located in Fort Lauderdale, Florida, and Moon River allegedly transferred all or substantially all of its assets to FONU.

14.     At or about the time of the asset transfer to the Company, Defendant Joel A. ("Jake") Shapiro was the CEO of Moon River.  Thereafter, on or about April 10, 2015, Shapiro purportedly resigned as CEO, and Moon Rover apparently had no active directors or officers for the corporation. Upon information and belief, Moon River's corporate status has been revoked by the State of Nevada and on or about June 6, 2016, its registered agent also resigned its position.

15.     Thereafter, Defendant Shapiro became FONU's Chairman and the Company moved its headquarters from Fort Lauderdale, Florida to Moon River's old offices outside of Savannah, Georgia, while also holding itself out to be "doing business as" "Moon River."

### B.     Auctus Invests in FONU and the Parties Execute the Transaction Documents

16.     On or about August 11, 2015, the Company executed, *inter alia*, a certain Securities Purchase Agreement (hereinafter the "Purchase Agreement" or the "SPA") and a certain Convertible Promissory Note with a principal amount of Sixty - Six Thousand – Five Hundred and 00/100 (<u>$66,500.00</u>) Dollars (hereinafter the "Note," and, with the SPA, the "Transaction Documents"), thereby entering into a contract with the Fund for its investment in FONU. *See* SPA, attached, restated and incorporated by reference herein as **<u>Exhibit A</u>**; Note, attached, restated and incorporated by reference herein as **<u>Exhibit B</u>**.

17.     Thereafter, on or about October 5, 2016, the Company executed, Amendment No. 1 to the Convertible Promissory Note (hereinafter the "Amendment" or "Amendment No. 1"), as executed on or about August 11, 2015. *See* Amendment No. 1, dated August 11, 2015, attached, restated and incorporated by reference herein as **<u>Exhibit C</u>**.

18.     A review of the Plaintiff's Transaction Documents and the Amendment reveals that

the Note has a conversion feature into which entitles the Plaintiff to convert, at amounts and upon timing that Auctus deemed appropriate, the Company's debt obligations, in whole or in part, into freely traded shares of FONU common stock. Under the terms and conditions of the Amendment and the Transaction Documents, the Plaintiff has, and has had, a contractual right to convert at a price for FONU common stock, averaged over a series of prior trading days, including and preceding the Conversion Date.

19.     By the Amendment and the Transaction Documents, the Company was also required to allocate and reserve shares of its common stock for future conversions by the Plaintiff. The reservation of shares was an independent obligation by the Company to the Plaintiff, and was a mechanism by which to effectuate the share conversion as envisioned by the Note.

C.      **Defendants' Misrepresentations and Omissions of Material Facts as to the Financial Condition of FONU and its Status as a "Shell Company" and Defendants' Fraud in Connection with Offer, Purchase and Sale of Securities**

20.     The Plaintiff asserts and alleges that the Defendants misrepresented, omitted and failed to provide material facts to Auctus in connection with its investments and in the offer, purchase and sale of securities, and especially with respect to the business, finances, operations and other material matters relating to the Defendants, including but not limited to certain corporate transactions of Defendants, including but not limited to the Company's status as a "shell company," within the scope of the federal securities laws.

21.     Pursuant to Rule 144 (17 C.F.R. §230.144), as promulgated pursuant to the Securities Act of 1933, *as amended* (hereinafter the "Securities Act"), 15 U.S.C. §§77a, *et seq.,* a "shell" company is one that has no or nominal operations and extremely limited assets. It is likely to have financial assets but no significant business activity. "Shell companies" don't generally create products, hire employees, or generate revenue. Rather, shells typically store money and

engage in financial transactions.[1]  In short, a "shell company" generally exists only on paper and has no office and no employees, but may have a bank account or may hold passive investments or be the registered owner of assets, such as intellectual property, or ships.

22.    For example, the U.S. Securities and Exchange Commission defines a "shell" company as follows:

> Shell company: The term shell company means a registrant, other than an asset-backed issuer as defined in Item 1101(b) of Regulation AB (§ 229.1101(b) of this chapter), that has:
> (1) No or nominal operations; and
> (2) Either:
>    (i)   No or nominal assets;
>    (ii)  Assets consisting solely of cash and cash equivalents; or
>    (iii) Assets consisting of any amount of cash and cash equivalents and nominal other assets

17 C.F.R. § 240.12b-2.

23.    It is well established under the federal securities laws that investors in a shell company, such as the Plaintiff, may not rely on Rule 144 to sell the shares in the public market.

24.    The ability to rely upon Rule 144 was a material provision of the Transaction Documents and was the "*sine qua non*" of the securities transaction between Auctus and FONU.

25.    It is undisputed that the Plaintiff would not, and could not, invest in FONU as a "shell company," as the federal securities laws precluded the availability of Rule 144 for the Plaintiff, thereby severely precluding its ability to be repaid or to recoup its investment in FONU shares.

26.    In Section 3(aa) of the Purchase Agreement, entitled: "*Representations and Warranties of the Company*," FONU provided a "representation and warranty" in its "shell company" status to the Plaintiff, as follows:

---

[1]"*Shell Corporation: Everything You Need to Know*," available at**:** https://www.upcounsel.com/shell-corporation #: ~:text=Shell%20corporations%20can%20be%20used,%2C%20or%20letter%2Dbox%20corporations.

The Company *represents that it is not a "shell" issuer* and *has never been a "shell" issuer*, or that if it previously has been a "shell" issuer, that at least twelve (12) months have passed since the Company has reported Form 10 type information indicating that it is no longer a "shell" issuer. Further, the Company will instruct its counsel to either (i) write a 144-3(a)(9) opinion to allow for salability of the Conversion Shares or (ii) accept such opinion from Holder's counsel.

*See* **Exhibit A** §3(aa), at p.13 (emphasis added).

27.     Upon information and belief, the Defendant's misrepresented its status as a "shell company" in its communications and representations to Auctus, and its statements to the Plaintiff in connection with the offer, purchase and sale of securities were incomplete, misleading, and/or misrepresentative of its financial condition and operations, and especially as to whether or not the corporation was a "shell," within the scope of the federal securities laws, and/or omitted material information with a duty to disclose the same to the Plaintiff.

28.     FONU's representation in Section 3 of the SPA was a material representation and warranty in the Transaction Documents, and critical to the Plaintiff's decision as to whether to loan monies to Defendant FONU. As a shell company, the Plaintiff would be unable to convert its debt into freely tradeable shares under Rule 144, and the conversion feature of the Note would effectively be delayed for a lengthy period of time, if not completely negated.

29.     FONU, an insolvent company based on its own financial statements filed with the SEC, was not likely to be able to repay its noteholders, including Plaintiff, in cash, due to insufficient funds, and as arising from the fraudulent actions of the Company, Shapiro and Miguel. Lenders in Plaintiff's position would necessarily expect to be repaid and potentially profit from the conversion and sale of FONU shares, rather than rely on the repayment in cash of interest accruing on the Note. Thus, the conversion feature of the Note remains critical to the Plaintiff's risk assessment and the value of the loan. Without such feature, the Plaintiff contends that no lender would have loaned money to the Defendant.

D.     **The Defendants' Filings Reveal the Depth of the Financial**
       **<u>Problems and Demonstrate that FONU Was a "Shell Company"</u>**

30.    Upon information and belief, the Defendants' subsequent filings with the
Commission revealed the depth to which the Company's Representations and Warranties were
false, incomplete, misleading, and/or misrepresentative or omitted material information with a
duty to disclose the same to the Plaintiff. Moreover, the SEC filings of FONU demonstrate that
the Company was squarely within the Commission's definition of a "shell company," and thereby
precluded the right of Auctus to use Rule 144 for conversion of its debt into the Defendant's freely
tradeable shares of common stock.

31.    Solely as an example of the Defendants' securities fraud and fraud and deceit, the
Company's Form 10-K, filed on or about March 31, 2016, stated, in pertinent part, as follows:

> "We have a negative operating cash flow and have a working capital deficit. These
> conditions raise *substantial doubt* about [o]ur *ability to continue as a going
> concern."*

*See* FONU Form 10-K, filing as of March 31, 2016 and for the period ending September 30, 2015,
at pp. 8 & 28 (emphasis added), as attached, restated and incorporated by reference herein as
**<u>Exhibit D</u>**.

32.    Solely as further examples of the misrepresentations by the Defendant, the
Company's Form 10-K reveals that FONU had accumulated a deficit of ($46,833.382.00) as of
September 30, 2015. *Id*. (**<u>Exhibit D</u>**), at p.45. The financials raise "substantial doubt" about the
Company's ability to continue as a "going concern." *Id*. FONU had a negative working capital of
($3,660,484.00) and during the year ended September 30, 2015, the Company realized negative
cash flows from operations totaling ($1,081,383.00). *Id*.

33.    As further evidence of its violations of the federal securities laws, since March 31,
2016, the Defendants have failed to file <u>any</u> Form 10-K's or Form 10-Q's. Indeed, the FONU Form

10-K revealed the depth of the fraud and deceit, as having been perpetrated upon the Plaintiff. *See* **Exhibit D**.

34.     There can be no dispute that, as indicated by the SEC filing, the Defendants lied and misrepresented FONU's finances and its status as a "shell company." Defendants FONU, Shapiro and Miguel made omissions of material fact to the Plaintiff, while having a duty to disclose material information that a reasonable investor would seek and use in its investment decision.

35.     Thus, in detrimental reliance upon the information, representations and statements from the Defendants, the Plaintiff invested thousands of dollars in the Company, which has, and has had, a fiduciary duty and a duty of the utmost loyalty to the Plaintiff. Unfortunately, to its detriment, the Plaintiff has learned that the Defendants had misrepresented and deceived the Fund, and fraudulently concealed and omitted material information while having a duty of disclosure, regarding the Company and perpetrated securities fraud in connection with the offer, purchase and sale of securities, in violation of, *inter alia*, Section 10(b) of the Exchange Act and Rule 10b-5, as promulgated thereunder, and the Massachusetts Uniform Securities Act, M.G.L. c. 110A, §§101, et seq., as amended.

### E.     The Defendants File Form 15 with the Commission and Withdraw FONU's Public Company Registration of its Securities

36.     On or about June 28, 2016, only ten (10) months after Auctus' investment in Fonu2, the Company filed its Form 15, titled "*Certification and Notice of Termination of Registration Under Section 12(g) of the Securities Exchange Act of 1934 or Suspension of Duty to File Reports Under Sections 13 and 15(d) of the Securities Exchange Act of 1934,*" with the Commission. *See* FONU's Form 15 filing, dated June 28, 2016, as attached, restated and incorporated by reference herein as **Exhibit E**.

37.     The Company's Form 15 expressly notified the public that, *inter alia*, FONU would no longer maintain current financial reports with the Commission. The suspension of FONU's statutory obligation to file reports under Sections 13 and 15(d) is, and was, a material misrepresentation of the Defendant's Purchase Agreement, Note and Amendment No. 1 with the Plaintiff. Defendants FONU, Shapiro and Miguel made omissions of material fact to the Plaintiff, while having a duty to disclose material information that a reasonable investor would seek and use in its investment decision in their intention and decision to file a Form 15.

38.     By the filing of a Form 15 within a mere ten (10) months of the Plaintiff's loan, the Defendants fraudulently induced Auctus after it reasonably relied upon the Transaction Documents and the Company's Representations and Warranties therein. FONU's filing of Form 15 with the SEC had cataclysmic consequences to the ability of the Fund to convert its investment into publicly tradeable securities of FONU common stock.

39.     One (1) day prior to the execution of the Transactions Documents, FONU filed its Form 10-Q with the Commission for the quarterly period ending June 30, 2015, but then has failed to file any quarterly or annual reports thereafter. Moreover, after the filing of its Form 15, dated June 28, 2016, there have been no further filings by the Company.

40.     The Plaintiff asserts that, by their actions, omissions and courses of conduct, the Defendants incurred and/or caused several Events of Default, as set forth in Article III, entitled "*Events of Default*," of the Note. These Events of Default included, *inter alia*, breaches of following provisions of the Transaction Documents: a) Sections 2.8 (Non-circumvention); b) 3.2 (Failure to honor conversion); c) 3.4 ( Breach of Agreements and Covenants – Section 2.8 of the Note – Non-circumvention); d) 3.10 (Failure to Comply with the Exchange Act); e) 4.15 (failure to register AFL shares); and f) Section 3.5 (Breach of Representations and Warranties -Section 3(g)

(SEC Documents; Financial Statements)); and i) Section 4.14 (Failure to notify of Future Financing).

**F.**    **SEC's Litigation Against the Defendants**

41.    As further demonstration of the Defendants' fraud in connection with the offer, purchase and sale of securities, on or about September 23, 2016, the SEC filed suit against the Company, Moon River, Joel A. "Jake" Shapiro, and Roger Miguel, and other(s), alleging, in pertinent part, violations of Sections 5(a), 5(c), and 17(a) of the Securities Act [15 U.S.C. §§ 77e(a), 77e(c), and 77q(a)], and together with violations of Sections 10(b), 13(a), and 14(c) of the Exchange Act [15 U.S.C. §§ 78j(b), 78m(a), and 78n(c)] and Rules 10b-5, 12b-20, 13a-1, 13a-11, and 14c-6 thereunder [17 C.F.R. §§ 240.10b-5, 240.12b-20, 240.13a-1, 240.13a-11, and 240.14c-6]. *See Securities and Exchange Commission v. Fonu2, Inc., Joel A. "Jake" Shapiro, Roger Miguel, et al.,* Case No. 4:16-cv-00253-WTM-GRS (U.S. Dist. Ct., S.D. GA.) (hereinafter the "SEC Litigation"). *See* Docket in SEC Litigation, dated as of September 8, 2021, as attached, restated and incorporated by reference herein as **Exhibit F**.

42.    In the SEC Litigation, the Commission details, in chapter and verse, the securities fraud scheme, as perpetrated by the Defendants and others, and how FONU, Shapiro and Miguel made multiple materially false and misleading statements in connection with the offer, purchase and sale of the Defendant's securities. *See* Commission's Complaint in SEC Litigation, dated as of September 23, 2016, as attached, restated and incorporated by reference herein as **Exhibit G**.

43.    According to the Docket in the SEC Litigation, on or about November 30, 2016, the Commission and Defendants Miguel and FONU filed a Stipulation consenting to a Permanent Injunction. *See* Docket (**Exhibit F**), ECF No. 12.

44.     On or about November 27, 2017, the Court granted the Permanent Injunction and the SEC's Motion to Approve Consent Judgment as to Defendants FONU and Miguel. *See Id.* (**Exhibit F**), ECF Nos. 41, 42 & 43.

45.     On or about January 17, 2018, the District Court in the Southern District of Georgia issued an Order granting the SEC's Motion to Approve Consent Judgment as to Shapiro, and thereafter entered its Final Judgment. *See Id.* (**Exhibit F**), ECF Nos. 46 & 47.

46.     Finally, on or about November 17, 2020 the Court issued a Default Judgment against a third-party and the SEC Litigation was closed. *See Id.* (**Exhibit F**), ECF Nos. 67 & 68.

**G.     The Plaintiff Suffers Damages as a Result of the Defendants' Fraud**

47.     There can be no dispute that the Defendants have committed securities fraud, unfair and deceptive trade practices, and has perpetrated a fraud and deceit upon the Plaintiff, and breached the Transaction Documents, causing the Plaintiff to suffer damages, and lost profits.

48.     For example, pursuant to Section 3.1, an Event of Default shall have occurred by the failure of the Company to pay the principal or interest when due on the Note, whether at maturity, upon acceleration, or otherwise. *See* Note (**Exhibit B**) § 3.1. This Event of Default, together with others, have occurred and continue to occur. Upon the occurrence of an Event of Default under Section 3.1 of the Auctus Note, the entire principal and accrued interest shall be due and owing hereunder.

49.     By Section 3 of the Note, the Defendants owe the "Default Sum" (as defined therein), due under the Note as multiplied by One Hundred - Fifty and 00/100 (150.00%) percent. Thus, as of the date hereof, the Defendants owe Plaintiff Auctus, under the SPA and the Note, the Default Sum totaling over $300,000.00. Until paid, the Default Sum shall continue to accrue the default interest rate of Twenty-four and 00/100 (24.00%) percent per year, provided by the Note.

## V. VIOLATIONS OF LAW

### COUNT I - VIOLATIONS OF FEDERAL SECURITIES LAWS
(as to all Defendants)

50.     The Plaintiff reasserts Paragraphs 1 through 49 of the Complaint, together with **Exhibits**, and restates and incorporates them herein by reference.

51.     The Defendants violated the Securities Act, 15 U.S.C §77a, *et seq.,* in addition to Section 10(b) of the Exchange Act, 15 U.S.C. §78j(b) and Rule 10b-5 promulgated thereunder, 17 C.F.R. §240.10b-5, in that, as described herein, and in connection with the purchase, offer and sale of securities, they knowingly, recklessly and intentionally:

a)      employed manipulative and deceptive devices and contrivances;

b)      employed devices, schemes and artifices to defraud;

c)      made untrue statements of material fact and omitted to state material facts necessary in order to make statements made, in light of the circumstances under which they were made, not misleading; and

d)      engaged in acts, practices and a course of business which operated as a fraud or deceit upon the Plaintiff.

52.     During the relevant time period and as set forth herein, the Defendants, jointly and severally, singly and in concert, directly and/or indirectly, engaged in one or more common plans, schemes, and unlawful courses of conduct, to operate or perpetrate a fraud or deceit upon the Plaintiff, in connection with the offer, purchase and/or sale of FONU securities.

53.     During the relevant time period and as set forth herein, the Defendants, jointly and severally, singly and in concert, directly and/or indirectly, knowingly or recklessly engaged in acts, transactions, practices, and courses of business which operated as a fraud and deceit upon Plaintiff in connection with the offer, purchase and/or sale of FONU securities.

54.     During the relevant time period and as set forth herein, the Defendants, jointly and severally, singly and in concert, directly and/or indirectly, published and disseminated false, deceptive and untrue statements of material facts to the Plaintiff in connection with the offer, purchase and/or sale of FONU securities.

55.     During the relevant time period and as set forth herein, the Defendants omitted material facts, with a duty to disclose such material facts, which a reasonable investor would require in order to make its investment decision, and in order to mislead the Plaintiff in connection with the offer, purchase and/or sale of FONU securities.

56.     During the relevant time period and as set forth herein, the Defendants made misrepresentations of material fact, especially as to the Company's "shell company" status, and/or omitted material facts while a duty to disclose the same, which a reasonable investor, including the Plaintiff, would require in making its investment decision, and upon which it relied, to its detriment.

57.     During the relevant time period and as set forth herein, the Defendants' purpose and effect of the scheme, plan, and unlawful course of conduct was, *inter alia*, to induce Plaintiff and others to purchase FONU securities.

58.     As a direct and proximate cause of the violations of the federal securities laws by the Defendants, Plaintiff Auctus has suffered, and continues to suffer, irreparable harm, and general, special, and consequential damages, including, but not limited to, loss of profits, interest, and other damages, injuries, and losses, to its detriment, and resulted in the unjust enrichment of the Defendants.

**COUNT II – "CONTROL PERSON" LIABILITY**
**UNDER THE FEDERAL SECURITIES LAWS**
**(as to All Defendants)**

59.     The Plaintiff reasserts Paragraphs 1 through 58 of the Complaint, together with

**Exhibits**, and restates and incorporates them herein by reference.

60.     During the relevant time period and as set forth herein, the Defendants are, and

were during the relevant time, "control persons" within the meaning of Section 20(a) of the

Exchange Act, 15 U.S.C. §78t(b).

61.     In addition to their direct liability, the Defendants are liable to the Plaintiff for the

conduct of the Company and such individual(s), as described herein, in that:

    a)     at all times material hereto, the Defendants controlled certain individual(s)
    of the Company, in their employ and/or subject to their authority, supervision
    and/or control, respectively, directly or indirectly;

    b)     at all times material hereto and with respect to all of the transactions and
    misrepresentations described herein, such individual(s), in their employ and/or
    subject to their authority, supervision and/or control, respectively, and/or as
    officers, employees and/or agents of the Defendants committed acts, practices
    and/or courses of conduct which were in violation of their obligations under the
    federal securities laws and the standards of the securities industry;

    c)     at all times material hereto, the Defendants failed to have policies, practices
    and/or procedures in effect, which were adequate, sufficient, necessary and/or
    appropriate in order to monitor and supervise the actions of such individual(s), as
    described herein, and adequate, sufficient, necessary and/or appropriate to prevent
    said actions, practices and/or courses of conduct from occurring and continuing to
    occur; and

    d)     at all times material hereto, the Defendants, with respect to the Plaintiff's
    investment, failed to properly or sufficiently implement, execute and/or utilize the
    policies, practices and/or procedures which they had in effect and which
    purportedly were intended and designed to monitor and supervise the actions of
    such individual(s), described herein and to prevent said actions from occurring and
    continuing to occur.

62.     The Defendants, jointly and severally, singly and in concert, directly and/or

indirectly, benefitted from fees, profits, gains, interest, commissions and/or other monies, as

derived from the conduct of such individual(s), as described herein.

63.     As "control persons," the Defendants are liable for the false and fraudulent actions, practices, courses of conduct and/or omissions of those controlled persons committing a fraud and deceit in connection with the offer, purchase and/or sale of FONU securities, at the time of the wrongs alleged herein and as set forth herein, within the meaning of Section 20(a) of the Exchange Act, as the Defendants had the supervision, power, authority, and influence over such controlled persons, and exercised the same as described herein.

64.     The Defendants' control, authority, supervision and/or positions made them privy to and provided them with knowledge, actual and/or apparent, as to the material misrepresentations and the omissions of material facts, with a duty to disclose, as to the Plaintiff.

65.     As a direct and proximate cause of the violations of the federal securities laws by the Defendants, Plaintiff Auctus has suffered, and continues to suffer, irreparable harm, and general, special, and consequential damages, including, but not limited to, loss of profits, interest, and other damages, injuries, and losses, to its detriment, and resulted in the unjust enrichment of the Defendants.

## COUNT III - VIOLATIONS OF MASSACHUSETTS STATE SECURITIES LAWS
### (as to all Defendants)

66.     The Plaintiff reasserts Paragraphs 1 through 65 of the Complaint, together with **Exhibits**, and restates and incorporates them herein by reference.

67.     The Defendants violated the Massachusetts Uniform Securities Act, Massachusetts General Laws Chapter 110A, §§ 101, *et seq.,* as amended, in that, as described herein, it offered and sold securities by means of untrue statements of material fact.

68.     The Defendants recklessly and intentionally misrepresented material information and omitted disclosure of material information to the Plaintiff in connection with the offer, purchase and sale of securities in the Commonwealth of Massachusetts.

69.     As a direct and proximate cause of the violations of the Massachusetts state securities laws by the Defendants, Plaintiff Auctus has suffered, and continues to suffer, irreparable harm, and general, special, and consequential damages, including, but not limited to, loss of profits, interest, and other damages, injuries, and losses, to its detriment, and resulted in the unjust enrichment of the Defendants.

### COUNT IV – "CONTROL PERSON" LIABILITY
### UNDER THE MASSACHUSETTS SECURITIES LAWS
### (as to All Defendants)

70.     The Plaintiff reasserts Paragraphs 1 through 69 of the Complaint, together with **Exhibits**, and restates and incorporates them herein by reference.

71.     During the relevant time period and as set forth herein, the Defendants are, and were during the relevant time, "control persons" within the meaning of Section 410(b) of the Massachusetts Uniform Securities Act, M.G.L. c. 110A.

72.     Massachusetts General Laws, Chapter 110A, Section 410(b) provides, in pertinent part, as follows:

> Every person who directly or indirectly controls a seller liable under subsection (a), every partner, officer, or director of such a seller, every person occupying a similar status or performing similar functions, every employee of such a seller who materially aids in the sale, and every broker-dealer or agent who materially aids in the sale are also liable jointly and severally with and to the same extent as the seller, unless the non-seller who is so liable sustains the burden of proof that he did not know, and in exercise of reasonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist.

M.G.L. c.110A, § 410(b).

73.     In addition to their direct liability, the Defendants are liable to the Plaintiff for the

conduct of the Company and such individual(s), as described herein, in that:

a)      at all times material hereto, the Defendants controlled certain individual(s) of the Company, in their employ and/or subject to their authority, supervision and/or control, respectively, directly or indirectly;

b)      at all times material hereto and with respect to all of the transactions and misrepresentations described herein, such individual(s), in their employ and/or subject to their authority, supervision and/or control, respectively, and/or as officers, employees and/or agents of the Defendants committed acts, practices and/or courses of conduct which were in violation of their obligations under the federal securities laws and the standards of the securities industry;

c)      at all times material hereto, the Defendants failed to have policies, practices and/or procedures in effect, which were adequate, sufficient, necessary and/or appropriate in order to monitor and supervise the actions of such individual(s), as described herein, and adequate, sufficient, necessary and/or appropriate to prevent said actions, practices and/or courses of conduct from occurring and continuing to occur; and

d)      at all times material hereto, the Defendants, with respect to the Plaintiff's investment, failed to properly or sufficiently implement, execute and/or utilize the policies, practices and/or procedures which they had in effect and which purportedly were intended and designed to monitor and supervise the actions of such individual(s), described herein and to prevent said actions from occurring and continuing to occur.

74.     The Defendants, jointly and severally, singly and in concert, directly and/or indirectly, benefitted from fees, profits, gains, interest, commissions and/or other monies, as derived from the conduct of such individual(s), as described herein.

75.     As "control persons," the Defendants are liable for the false and fraudulent actions, practices, courses of conduct and/or omissions of those controlled persons committing a fraud and deceit in connection with the offer, purchase and/or sale of FONU securities, at the time of the wrongs alleged herein and as set forth herein, within the meaning of Section 410(b) of the Massachusetts Uniform Securities Act, M.G.L. c. 110A, as the Defendants had the supervision, power, authority, and influence over such controlled persons, and exercised the same as described herein.

76.     The Defendants' control, authority, supervision and/or positions made them privy to and provided them with knowledge, actual and/or apparent, as to the material misrepresentations and the omissions of material facts, with a duty to disclose, as to the Plaintiff.

77.     As a direct and proximate cause of the violations of the Massachusetts securities laws by the Defendants, Plaintiff Auctus has suffered, and continues to suffer, irreparable harm, and general, special, and consequential damages, including, but not limited to, loss of profits, interest, and other damages, injuries, and losses, to its detriment, and resulted in the unjust enrichment of the Defendants.

## COUNT V – BREACH OF CONTRACT
### (as to Defendant FONU only)

78.     The Plaintiff reasserts Paragraphs 1 through 77 of the Complaint, together with **Exhibits**, and restates and incorporates them herein by reference.

79.     Pursuant to the Securities Purchase Agreements and the Convertible Notes, as amended, the Fund invested in the Company and sought to become a shareholder, in good faith, to join the Company in the accomplishment of its business goals and in accordance with the standards of the business and the securities industry.  The Fund contends that the Defendants breached the contract with the Plaintiff by its conduct, as described herein.

80.     The Fund alleges that the Company is liable for a breach of contract and for a breach of an implied covenant of good faith and fair dealing. A breach of contract is failure without excuse to perform a duty, which is due under the contract. Additionally, the interpretation of a contract is a question of law, not fact. If the wording is not ambiguous, then the contract must be enforced according to its plain terms.

81.     The Fund performed its obligations under the Purchase Agreements and the Notes, as amended, and in good faith.

82.     The Defendants, by their conduct described herein, violated the Purchase Agreement and the Note, and COJ, breaching their contracts with the Plaintiff.

83.     It is undisputed that Defendants Shapiro and Miguel is the guarantor of the contracts between the Company and the Plaintiff, and is liable to the same extent as FONU.

84.     The Fund contends that FONU breached the investment contracts with the Plaintiff by its conduct, as described herein, and that Defendants Shapiro and Miguel, as Guarantor, is liable for such breach of contract.

85.     As a direct and proximate cause of the Defendant's breaches of its contract, the Plaintiff has suffered irreparable harm, and general, special, and consequential damages, including, but not limited to, loss of profits, interest, and other damages, injuries, and losses, to its detriment.

**COUNT VI – BREACHES OF IMPLIED**
**COVENANT OF GOOD FAITH-FAIR DEALING**
**(as to Defendant FONU only)**

86.     The Plaintiff reasserts Paragraphs 1 through 85 of the Complaint, together with **Exhibits**, and restates and incorporates them herein by reference.

87.     It is well established in that every contract carries an implied covenant of good faith and fair dealing whereby the parties treat each other fairly and act in good faith and no party to the contract shall take any action to harm another party's rights under the contract. The duty imposed by this "implied covenant of good faith and fair dealing" pertains to bad faith in the performance of a contract, not just in its execution or negotiation. Implicit in every contract is the requirement on faithfulness to an agreed upon common purpose and consistency with the justified expectations of the other party.

88.     A breach of contract is the failure to perform for which legal excuse is lacking. As a matter of law, a contract existed, which the Company breached and failed to comply with the

covenant of good faith and fair dealing. The law is clear - the Fund had a binding contract with the Company and FONU has no legal basis, as a matter of law, to avoid its obligations under the Transaction Documents including but not limited to damages which arose, and which might arise, as a result from the breach of such Transaction Documents.

89.    The Defendant had a duty of good faith and fair dealing in its dealings with the Plaintiff and pursuant to the promises, contract, and statements made to the Plaintiff to induce it to enter into the contract and provide assets to the Defendants in exchange for their promise to repay the same, with interest.

90.    Under the covenant, the Defendant was obligated to good faith perform of its obligations under the Purchase Agreements and the Notes, as amended, with the Plaintiff, and to be faithful and consistent to the justified expectations of the Plaintiff.

91.    As described above, the Defendant breached the implied covenant of good faith and fair dealing with the Plaintiff.

92.    As a direct and proximate cause of the Defendant's breaches of the implied covenant of good faith and fair dealing, the Plaintiff has suffered irreparable harm, and general, special, and consequential damages, including, but not limited to, loss of profits, interest, and other damages, injuries, and losses, to its detriment.

<u>**COUNT VII – UNJUST ENRICHMENT**</u>
**(as to Defendants Shapiro and Miguel)**

93.    The Plaintiff reasserts Paragraphs 1 through 92 of the Complaint, together with the **<u>Exhibits</u>**, and restates and incorporates them herein by reference.

94.    The Defendants illegally received assets and benefits from the Plaintiff, as arising from their false and fraudulent statements and misrepresentations, and without providing equivalent value therefor.

95.     The Defendants' actions, courses of conduct, and omissions were wantonly, intentionally, and maliciously conducted against the Plaintiff, to its detriment.

96.     The Defendants have been unjustly enriched by his actions, as described herein.

97.     As a direct and proximate cause of the Defendants' unjust enrichment, the Plaintiff has suffered irreparable harm, and general, special, and consequential damages, including, but not limited to, loss of profits, interest, and other damages, injuries, and losses, to its detriment.

## COUNT VIII – BREACH OF FIDUCIARY DUTY
### (as to all Defendants)

98.     The Plaintiff reasserts Paragraphs 1 through 97 of the Complaint, together with the **Exhibits**, and restates and incorporates them herein by reference.

99.     A fiduciary relationship existed between the Plaintiff and the Defendants, requiring them to act with a duty of the utmost loyalty and trust on behalf of the Plaintiff.  As fiduciaries, the Defendants were required to maintain and protect the welfare of the Plaintiff.

100.     By engaging in the conduct described herein, the Defendants breached their respective fiduciary duties to the Plaintiff.

101.     As a direct and proximate cause of the Defendants' breach of fiduciary duty, the Plaintiff has suffered irreparable harm, and general, special, and consequential damages, including, but not limited to, loss of profits, interest, and other damages, injuries, and losses, to its detriment.

## COUNT IX - FRAUD AND DECEIT
### (as to all Defendants)

102.     The Plaintiff reasserts Paragraphs 1 through 101 of the Complaint, together with the **Exhibits**, and restates and incorporates them herein by reference.

103.     The actions of the Defendants described herein constitute fraud and deceit, including but not limited to the following:

a)      the Defendants made false representations of material facts, and/or omitted material facts with a duty of disclosure, knowing or having reason to know of their falsity;

b)      the Defendants made said misrepresentations and omissions for the purpose of inducing reliance from the Plaintiff; and

c)      the Plaintiff did rely upon said misrepresentations and omissions, to its detriment.

104.    As a direct and proximate cause of the Defendants' fraud and deceit, the Plaintiff has suffered irreparable harm, and general, special, and consequential damages, including, but not limited to, loss of profits, interest, and other damages, injuries, and losses, to its detriment.

## COUNT X - NEGLIGENT MISREPRESENTATION
### (as to all Defendants)

105.    The Plaintiff reasserts Paragraphs 1 through 104 of the Complaint, together with **Exhibits**, and restates and incorporates them herein by reference.

106.    The conduct of the Defendants as described herein constitutes negligent misrepresentation in that the Defendants negligently provided the Plaintiff with erroneous and misleading information, and negligently omitted material information with a duty to disclose, to the Plaintiff's detriment.

107.    As a direct and proximate cause of the Defendants' negligent misrepresentations, the Plaintiff has suffered irreparable harm, and general, special, and consequential damages, including, but not limited to, loss of profits, interest, and other damages, injuries, and losses, to its detriment.

## COUNT XI - VIOLATIONS OF MASSACHUSETTS
## CONSUMER PROTECTION ACT / M.G.L. C. 93A, §§ 2 & 11
### (as to all Defendants)

108.     The Plaintiff reasserts Paragraphs 1 through 107 of the Complaint, together with

the **Exhibits**, and restates and incorporates them herein by reference.

109.     At all relevant times herein, the Defendants conducted a trade or business, as

defined by the Massachusetts Consumer Protection Act, M.G.L. c. 93A, within the Commonwealth

of Massachusetts.

110.     The conduct of the Defendants as described herein, constitutes unfair and deceptive

trade practices, under Sections 2 and 11 of the Consumer Protection Act, including but not limited

to claims that the Defendants:

> a)     executed the Securities Purchase Agreements and the Notes with full
>
> knowledge and understanding of the Defendant's obligations to the Plaintiff;
>
> b)     fraudulently induced the Plaintiff to invest in the Company as a "shell" and
>
> thereby breached its promise to repay the Plaintiff;
>
> c)     fraudulently concealed from the Plaintiff the full and complete financial and
>
> operational details and prospects of the Company as a "shell" and in inducing the
>
> Plaintiff to make its investment in the Company;
>
> d)     knowingly and intentionally concealed these activities from the Plaintiff, to
>
> its detriment; and/or
>
> e)     violated the requirements, terms and conditions of existing statutes, rules
>
> and regulations meant for the protection of the public's health, safety or welfare.

111.     As a direct and proximate cause of the Defendants' violations of the Massachusetts

Consumer Protection Act, M.G.L. c. 93A, Sections 2 and 11, the Plaintiff has suffered irreparable

harm, and general, special, and consequential damages, including, but not limited to, loss of profits, interest, and other damages, injuries, and losses, to its detriment.

### COUNT XII – CIVIL CONSPIRACY
**(as to all Defendants)**

112.    The Plaintiff reasserts Paragraphs 1 through 111 of the Complaint, together with the **Exhibits**, and restates and incorporates them herein by reference.

113.    The Defendants, together with others, combined, conspired, acted in concert, and/or engaged in a conspiracy by entering into an agreement with unlawful motives and/or means, and undertook overt acts towards the ends of such conspiracy. The Defendants required coordination and unity of actions and/or in concert, with the joint tortious activity of the other co-conspirators.

114.    The Defendants had the ability to cause, force, coerce, and/or encourage others to participate in this conspiracy.

115.    The Defendants formed an agreement, acted intentionally and overtly in furtherance of that agreement, and the Plaintiff incurred damages and injuries as a result. The Defendants acted in furtherance of the civil conspiracy, against the Plaintiff, to its detriment.

116.    As a direct and proximate cause of the Defendants' civil conspiracy, the Plaintiff has suffered irreparable harm, and general, special, and consequential damages, including, but not limited to, loss of profits, interest, and other damages, injuries, and losses, to its detriment.

## VI. <u>REQUESTS FOR RELIEF</u>

WHEREFORE, the Plaintiff, Auctus Fund, LLC, respectfully requests that this Honorable Court grant it the following relief:

A)      Order, grant and enter temporary, preliminary and permanent injunctive and equitable relief, and specific performance, and finding that the Plaintiff has suffered irreparable harm, has a likelihood of success on the merits, that the balance of hardships favors the Plaintiff and that it is in the public interest to grant such temporary, preliminary and permanent injunctive and equitable relief, and specific performance for the benefit of the Plaintiff, as set forth herein;

B)      Determine that the Defendants are liable for all damages, losses, and costs, as alleged herein;

C)      Determine and award the Plaintiff, Auctus Fund, LLC, the actual losses sustained by it as a result of the violations of law by the Defendants, as set forth herein;

D)      Render a judgment and decision on behalf of the Plaintiff, Auctus Fund, LLC, on all Counts of the Complaint, and issue findings of fact and rulings of law, as necessary and appropriate, that the Defendants are liable, in all respects;

E)      Order, decide, adjudge, and determine that the liability of the Defendants, is for all losses, injuries, and damages, special, consequential, general, punitive, and/or otherwise, and for all interest and costs, as alleged herein;

F)      Award the Plaintiff, Auctus Fund, LLC, its costs, including, but not limited to, filing fees, costs, expenses and interest, for being required to prosecute this action;

G)    Award the Plaintiff, Auctus Fund, LLC, its actual attorneys' fees, for being required to prosecute this action;

H)    Award the Plaintiff, Auctus Fund, LLC, multiple, double, treble, and/or punitive damages in an amount to be determined;

I)    Enter judgment on behalf of the Plaintiff, Auctus Fund, LLC, on the Complaint;

J)    Order declaratory relief, as appropriate and as this Honorable Court deems necessary; and/or

K)    Any additional relief which this Honorable Court deems just and proper.

**THE PLAINTIFF, AUCTUS FUND LLC,**
**<u>DEMANDS A TRIAL BY JURY ON ALL COUNTS SO TRIABLE</u>**

Respectfully Submitted,
PLAINTIFF, Auctus Fund LLC,

By its Attorneys,


   /s/ *Philip M. Giordano*
Philip M. Giordano, Esq. (BBO No. 193530)
Giordano & Company, P.C.
REED & GIORDANO, P.A.
47 Winter Street, Suite 800
Boston, Massachusetts 02108-4774
Telephone: (617) 723-7755
Facsimile: (617) 723-7756
Dated: September 8, 2021      Email: pgiordano@reedgiordano.com